house "until I am settled with Mandelstein," whereupon Low said, "What have you got to settle with Mandelstein?" and the plaintiff told him that Mandelstein owed him very much money, and he could not go ahead and finish what Low called his house. Thereupon Low said, "Now, Mr. Lippmann, you know this house belongs to me, and go ahead and finish it, and I will pay you," and then he asked how much the house was worth, and the plaintiff told him it was worth to finish $525, to which Low said, "That will be all right. I will pay." "I would like to have the house finished so that I can arrange it,"—to which the plaintiff said, " 'All right. I will go ahead and finish it, if you say you will pay me for it.' He said, 'All right.' " The plaintiff also testified that on another occasion Low also said to him: "That will be all right. I will pay you. Go ahead and finish it,"—and also that Hillard Low was at the house every two or three days, and saw the work the plaintiff was doing there, and picked out some wall papers, and directed how the decorating of the front and back parlor ceiling should be done. The plaintiff had no personal relations with Lydia Low; nor does he claim to have ever seen her, or had any communication with her upon the subject of work to be done upon her house. He relied upon the statement of Hillard Low as to the ownership of the property, and his contract was made with him. There was nothing whatever in the proofs to show any agency on the part of Hillard Low to make the contract for his wife, nor is there the slightest evidence to indicate that she had any knowledge that the plaintiff was doing the work upon the premises, nor is there a fact from which an inference can be drawn that in any manner she assented to that work being done. Nothing appears connecting her with the subject-matter of the action. Neither agency nor assent can be implied from the simple fact that she was the wife of Hillard Low. What her financial relations with her husband may have been, or what may have been the consideration for the transfer of this particular house from Mandelstein to her, does not appear. It is not even shown that she was aware that the work contracted for by the plaintiff with Mandelstein had not been completed at the time she took the deed of the premises. As Lydia Low made no contract herself with the plaintiff, and as it is not proven that her husband was her agent to make a contract, and as the proof entirely failed to show any act of consent or acquiescence in the work being done upon her property, the court below properly dismissed the complaint.

The judgment must be affirmed, with costs. . All concur.

---

(69 App. Div. 27.)

SELETSKY v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. February 7, 1902.)

1. STREET RAILWAYS—PERSONAL INJURIES—VEHICLES—EVIDENCE—INEVITABLE ACCIDENT.

Plaintiff, a boy about 15 years old, while riding with his feet hanging down on the rear end of a truck being driven on a street railway track, and followed by one of defendant's cars, was injured by his leg being struck by the car. Plaintiff testified that when the car was about 25 feet away the bell was sounded, and that he started to lift his leg when

the car was about 10 feet away; that the car was proceeding at full speed, and was about 20 or 30 feet away when the driver of the truck started to pull his horses out of the track. The driver of the truck, corroborated by other witnesses, testified that as he pulled his team out of the track one of the horses slipped and fell, and a couple of seconds thereafter the car struck the truck. There was testimony that the car was proceeding slowly. Plaintiff testified that the horse did not fall until after the wagon was struck. *Held*, that it was n' t error for the court to fail to declare the accident unavoidable, but that it properly submitted the issue of negligence to the jury, with the instruction that, if they believed the accident unavoidable, the boy could not recover.

2. SAME—CONTRIBUTORY NEGLIGENCE.
  Plaintiff's contributory negligence was for the jury.
  Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by Benjamin Seletsky, by guardian ad litem, against the Third Avenue Railroad Company, for damages for personal injuries. From a judgment in plaintiff's favor, and from an order denying a new trial, defendant appeals. Affirmed.

See 60 N. Y. Supp. 405.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Edward D. O'Brien and Charles F. Brown, for appellant.
J. Charles Weschler, for respondent.

PATTERSON, J. The proof, as it appears in this record, was of such a character as to require the submission of the issues of negligence and contributory negligence to the jury. There is a feature of the case to which prominence was given, and in respect of which the court properly instructed the jury, and that feature is presented by the claim of the defendant that the accident from which the plaintiff suffered was an unavoidable one. The circumstances connected with that accident are the following: The plaintiff, a boy about 15 years of age, with another lad, was riding on the rear of a truck being driven on Third avenue, in the city of New York. They got upon this truck at about Twenty-Ninth street. It was proceeding in a northerly direction on the easterly track of the defendant's line of railway. The vehicle on which they were riding had proceeded as far as between Fifty-First and Fifty-Second streets. The plaintiff was sitting on the rear of the truck, with his legs hanging down. The truck was followed by one of the defendant's cars, which (at Fifty-First street) one of the plaintiff's witnesses places at a distance of about 30 feet from the rear of the truck. The motorman of the car rang his bell as a signal to the driver to turn out from the track, which the driver attempted to do; but before the rear wheels of the truck left the track the car ran into it, struck the plaintiff's leg, and injured it severely. The contact of the car with the truck was at a point near Fifty-Second street. The testimony of the plaintiff was to the effect that he made the effort to lift his leg and get into a secure place on the truck, but before he could do so he was struck. The motorman in charge of this car, for some undisclosed reason, was not called as a witness; but there is testimony of

other witnesses which raises a distinct conflict as to the situation of
the plaintiff, and his ability to avoid the accident. The plaintiff states
that, when the bell of the car started to ring, he was trying to lift up
his leg, to avoid the possibility of injury; that the car was about 15
feet away (that is, when the bell began to ring the car was about 25
feet away, and when he started to lift his leg the car was about 10
feet away); that he meant that the car had gone about 15 feet from
the time the bell began to ring until he began to lift his leg; that the
car was proceeding at full speed. He also testified that the car was
about 25 or 30 feet away when the driver of the wagon first started
to pull his horses out, and that the car was then coming full speed.
The inference from this testimony is that the plaintiff was watching
the approach of the car, and that he attempted to lift his leg when he
saw the car was a certain distance from him, but that the speed of the
car was so great he could not succeed in doing so before contact with
the car took place. Another witness called by the plaintiff testified
that he was riding on the car; that near Fifty-Second street, about
15 feet distant from the wagon, the motorman rang his bell, the
driver of the wagon turned to the right,—to the east side,—and the
car was coming very fast, and struck the child, who was seated on the
rear of the wagon; that the rear wheels were on the track, or, rather,
that the wheel on the west side was on the track. The boy who ac-
companied the plaintiff testified that he was seated on the east side
of the truck, and that when the car was "a house and a half" away
from the wagon the car bell began to ring; that the plaintiff lifted
up his right foot, and wanted to lift up his left foot, when the car ran
into the wagon and smashed his foot. The defendant called as a
witness the driver of the truck, who stated: That his vehicle was on
the east side of the track of the defendant's road about 40 feet from
the corner of Fifty-Second street, when it was struck by the car.
He heard the motorman ringing the bell, and he turned around in
the middle of the block and said to the motorman, "Take your time,
and when I get a chance I'll pull out." He did turn out in the middle,
of the block. He did not see the boys on the tail board. He pulled
out his team, and as he did so the near side horse slipped and fell,
"and no more than he fell, a couple of seconds, the car struck the
tail end of my truck, and pushed the horse, maybe, a foot or two, and
then I stopped and blocked the road until I could get my horse up."
It was that striking by the car that hurt the boy. He also testified
that when his horse slipped and fell it had no effect on the truck or
on him, but it had effect with respect to the stopping of the wagon;
and he said: "Of course, when the horse fell, the wagon stopped
suddenly; and I think, only for that, the car would never hit the
wagon." A policeman who saw the accident also testified on behalf
of the defendant that he saw the plaintiff "sitting on the tail end of
the wagon, with his legs hanging down, and the car had almost
cleared the truck when the horse stumbled, and the car was so close.
It was within five feet of the truck, going very slowly; and before
the gripman could put on the brake the car slid up and struck the
wagon on the corner, and hit the boy on the leg." This officer was
riding on the car which collided with the wagon. Another witness,

who was also on the car, said that he saw the horse fall, and that it. fell before the car struck the wagon.   The plaintiff testified that the horse did not fall until after the wagon was struck.

Upon the whole evidence, the court charged the jury that if they believed that the accident was an unavoidable one, caused by the falling of the horse, "your verdict cannot be against the company." That was as favorable an instruction as the defendant was entitled to. As the jury have found for the plaintiff, it is therefore evident that they did not believe that the accident was caused by the falling of the horse, but was the result of the contact of the car with the truck, and therefore they must have proceeded to inquire further as to the negligence of the motorman; and they evidently found that that negligence consisted in the motorman allowing the car to proceed at such a rate of speed behind this truck attempting to leave the track that the car could not be stopped in time to avoid a collision before the rear wheels of the truck left the track.   There was enough to go to the jury upon that subject; and it was also for the jury to say, under the circumstances, whether the plaintiff was himself negligent in failing to put himself in a place of safety on the truck in time to avoid the accident.

The judgment and order appealed from should be affirmed, with costs.

HATCH and LAUGHLIN, JJ., concur.

INGRAHAM, J. (dissenting).   The plaintiff, a boy 14 years of age, on the 14th of May, 1899, was riding on a truck.   He got on this truck at Twenty-Ninth street and Third avenue.   The truck proceeded up Third avenue upon the east track of the defendant's road, turning out to allow the cars to pass.   When the truck reached Fifty-First street a car came up, ringing its gong for the truckman to get out of the way.   The plaintiff testified that when the gong on the car was rung it was about 1½ houses (about 30 feet) from the truck; that the driver started to turn his horses off the track; that, when he saw the car would not stop, then he tried to "pick up his legs"; that he had pulled up one leg, and was about pulling up the other, when it was caught between the car and the truck; that the truck was almost off the track; and that the time that elapsed between the time that the bell was rung and the time of the accident was about two minutes.   The car was about 10 or 15 feet away when he commenced to lift his legs.   There was another boy with the plaintiff, about the same age, who was seated upon the truck in the same manner.   This boy took up his legs before the plaintiff, and it was because the plaintiff saw his companion pulling his legs out of the way that he started to do the same.   It was conceded that the boy was sui juris.   The blow was not sufficient to break the boy's leg, and the wagon was not upset or injured.   The driver of the truck testified that his truck was a large one, with two horses; that the boy was injured about 30 or 40 feet from the corner of Fifty-Second street; that the horses were walking between Fifty-First and Fifty-Second streets, on the uptown track; that he heard the

gripman ringing the bell; that he turned around in the middle of the block, and said to the motorman, "Take your time, and when I get a chance I will pull out;" that when he got near the corner of Fifty-Second street he pulled his team off the track; that the near side horse slipped and fell, and the car struck the tail end of the truck, and pushed the horse a foot or two; that the truck then stopped and blocked the road until he could get his horse up; that the fall of the horse had the effect of stopping the truck, and but for that the car would not have hit the truck; that as he turned his horses out of the track he struck his horse with a whip, and as he did so the near horse fell; that he first heard the bell ring and the gripman yell at Fifty-First street, and when the car struck the truck he was within 30 feet of Fifty-Second street; that it was not a fact that the slipping of the horse was caused by the car striking the wagon; that the horse slipped before the car struck the truck; that neither horses nor the wagon were injured. A policeman who was riding on the car testified that the car was going very slowly near Fifty-Second street; that he then saw the truck pulling out from the track on the east side, and had almost cleared the track; that the plaintiff was sitting on the tail end of the wagon, with his legs hanging down, and when the truck had almost cleared the track one of the horses stumbled, and the car was so close—it was within five feet of the truck, going very slowly—that before the gripman could put on the brake the car slid up and struck the wagon on the corner, and hit the boy on the leg; that the gripman did not apparently increase the speed of the car; that the wagon was not pushed forward over two feet, and the other horse did not fall. There was another witness who was a passenger on the car, and who corroborated this testimony of the policeman. Upon this evidence the court submitted the case to the jury, who found a verdict for the plaintiff. The uncontradicted evidence of all the witnesses is that the accident was caused by one of the horses of the truck falling just as the truck was about to clear the track. That the car was running very slowly is proved by all the witnesses, except the plaintiff. The blow was a very light one, merely pushing the truck a very few feet; and but for the fact that the plaintiff allowed his legs to hang over the back of the truck, notwithstanding the approach of the car, no injury would have happened. It was not negligence for the motorman to keep close to the truck to avail himself of an opportunity to proceed as soon as the truck cleared the track. Upon the whole case, I think the plaintiff failed to show that the accident happened from the negligence of the defendant, or that plaintiff was free from contributory negligence. The injury was caused by the fall of the horse stopping the headway of the truck, and for this the defendant was not liable.

I think the verdict was against the weight of evidence, and that the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., concurs.